UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON



**Eastern District of Kentucky**
**FILED**

JAN 3 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-06-GWU

TERRY HENSLEY,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Hensley

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Hensley

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Hensley

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Hensley

physical and mental impairments.   Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The administrative law judge (ALJ) found that Hensley suffered from degenerative and discogenic disorders of the back, a history of treatment for olecranon bursitis, loss of vision in the right eye, a pain disorder and depression. (Tr. 19). These conditions restricted the plaintiff from performing work that required (1) any climbing of ladders, scaffolds or ropes, (2) acute bilateral vision, (3) exposure to unprotected heights or around dangerous/moving machinery, and (4) more than a "limited but satisfactory" ability to maintain attention and concentration, handle detailed instructions, or adapt to changes in a routine work setting. (Tr. 24).  These restrictions were believed not to prevent the plaintiff from returning to his past relevant work as a painter and farm worker, based on the testimony of a vocational expert (VE). (Tr. 23).  Thus, the claim for benefits was denied. (Tr. 25).

The plaintiff testified that he had worked stripping tobacco in Lexington for about a year and that he had also painted car parts for about a year in Detroit, during the last fifteen years. (Tr. 43-44).  The VE characterized the painting job as medium in exertion and unskilled, and his history as a farm worker as heavy and unskilled. (Tr. 55). He indicated that the two jobs would be possible for an individual with the restrictions later noted in the written decision. (Tr. 56).The initial question for review is whether the factors cited to the VE adequately described his condition.

7

When the plaintiff initially filed his application for benefits, he alleged that he had been disabled since July, 2000 due to partial blindness, headaches, and various musculoskeletal problems, and was "miserable" emotionally. (Tr. 77, 115, 122-123). In a later form, he stated that he could not "enjoy any activity because of the severe pain in [his] back, arms, legs, [and] neck, . . . [and he got] severe headaches almost constantly." (Tr. 130, 131). He also later stated that his "arms and hands go numb when I lift them up." (Tr. 165). He clarified his sources of disability in his testimony at the administrative hearing, indicating that he had lost vision in the right eye, and that he had a problem with depth perception. (Tr. 51).

The plaintiff's treatment was at the Veteran's Administration Hospital, where one initial exhibit's records covered the period from July, 1999 through mid-December, 2001. (Tr. 4). In July of 1999, Hensley sought treatment for chronic headaches; a history of facial trauma with reconstruction was noted. (Tr. 260). He received vision testing on several occasions and a macular scar and aphakia[1] was observed in the right eye. (E.g., Tr. 249). In January, 2001, it was noted that a depression screen was positive. (Tr. 237). Complaints of numbness in his hands were voiced the same month (Tr. 236); although the plaintiff's sensation was reportedly intact (Tr. 235), the doctor ordered a cervical spine x-ray which ultimately showed degenerative arthritis at the C6-7 level with foraminal narrowing (Tr. 265).

---

[1]Aphakia is defined as the absence of the lens of the eye; it may occur congenitally or from trauma, but is most commonly caused by extraction of a cataract. Dorland's Illustrated Medical Dictionary, (27th Ed.), p. 110.

The doctor determined to use conservative treatment in response for the time being. (Tr. 236). In April, the patient repeated complaints of hand numbness, and also noted tingling and neck pain; EMG/NCV studies revealed evidence of median mononeuropathy at the wrist and peripheral polyneuropathy as well as evidence of a ulnar sensory axonal injury. (Tr. 229-230). Visual testing was done again in May, with continued observation of aphakia in the right eye, but 20/20 vision in the left eye. (Tr. 219-220). Numbness was again the source of complaints in July, but conservative treatment was continued. (Tr. 224). Elbow pain began to be the source of complaint in September, in addition to arm numbness. (Tr. 217). The doctor told him that part of this was due to the old trauma and exacerbated by performing repetitive motion; he told Hensley to avoid repetitive lifting. (Tr. 213, 216). The doctor ordering detailed glaucoma testing expressed some concern over the plaintiff's having to drive an "enormous" distance to take his test in September. (Tr. 208). Arm pain continued to be a complaint. (E.g., Tr. 202). The plaintiff was noted to have persistent olecranon bursitis; the swelling was reduced as of December 6th, but there was still pain and warmth to the area. (Tr. 200). Thus, the records from the VA through the year 2001 do document repeated treatment for neck and upper extremity problems and objective studies, as well as the fact that the plaintiff was told not to engage in repetitive lifting; further, there was some concern over prolonged driving.

The plaintiff underwent a consultative examination in March, 2002. The examiner found 20/25 vision in the left eye and 20/200 vision in the right eye. (Tr.

9

267). Dr. Kidd, the consultant, noted a diagnosis of a spur at C-7, which he was informed of by the plaintiff, but was apparently not provided any test results himself. (Tr. 270). He did not complete an assessment form, however.

Medical Reviewer Carlos Hernandez looked at the record at that point and found that the plaintiff's condition was less than "severe." (Tr. 282). In doing so, he made no reference to the EMG/NCV studies from the VA and believed that there had been no treating source statement of restriction (Tr. 280). Accordingly, he did not properly rebut the VA proscription against repetitive lifting. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Subsequently, Medical Reviewer John Rawlings issued another "less than severe" opinion, again without proper rebuttal of the treating source opinion.

Subsequently, more records were introduced from the VA indicating continued complaints of hand problems. (Tr. 330, 344, 349, 353, 354) as well as a lumbosacral x-ray showing degenerative arthritis, with narrowing of L4-5 and L5-S1. (Tr. 367). While these were not accompanied by a new residual functional capacity assessment statement, they do at least document continued treatment of the plaintiff's major complaint as well as providing documentation of objective findings regarding the low back.

The specific limitations voiced by the treating sources would seem patently incompatible with the jobs of tobacco stripping and painter. The plaintiff testified that his fairly brief work as a self-employed painter was unsuccessful, as it took him too

Hensley

long to complete painting jobs, which was consistent with an inability to work only a few hours a day; at another point in his testimony, he indicated a problem with reaching. A brief review of DOT §529.686-038 (tobacco feeder-catcher, which includes the function of tobacco stripping), for example, reveals that this job involves frequent reaching, constant handling, and exerting 50 to 100 pounds of force frequently, which would certainly be incompatible with someone incapable of repetitive motion or lifting.

The case must be remanded for further consideration of the limitations voiced by the treating source, the VA.

This the ___31___ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE